**TRENK, DiPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
(973) 243-8600
Richard D. Trenk (RT6874)
*Proposed Counsel to Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BEACON VILLAGE, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-21397 (MS)<br>*\*Motion for Joint Administration Pending*<br><br>Honorable Morris Stern |
| In re:<br><br>ALLENTOWN APARTMENTS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-21404 (MS)<br><br>Honorable Morris Stern |
| In re:<br><br>TUDOR ARMS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-21410 (MS)<br><br>Honorable Morris Stern |

**VERIFIED APPLICATION IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THE INTERIM AND FINAL USE OF CASH COLLATERAL**

TO:   THE HONORABLE MORRIS STERN
     UNITED STATES BANKRUPTCY JUDGE

Beacon Village, LLC ("Beacon"), Allentown Apartments, LLC ("Allentown"), and Tudor Arms, LLC ("Tudor") (collectively, the "Debtors"), by and through their proposed undersigned counsel, hereby move before this Court (the "Motion"), for entry of an order authorizing the Debtors' interim and final use of cash collateral pursuant to sections 105, 363(c)(2)(B), and 363(e)

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a "core" proceeding pursuant to 28 §§ 157(b)(2)(A) and (M).

## BACKGROUND

3. On April 15, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

4. On April 15, 2010, the Debtors filed a motion seeking the joint administration of these chapter 11 proceedings cases (the "Joint Administration Motion"). The Joint Administration Motion is still pending before this Court.

5. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustees, examiners, or creditors' committees have been appointed in the Debtors' bankruptcy cases.

6. The Debtors are owners of residential apartment complexes in Plainfield, New Jersey and Allentown, Pennsylvania (hereinafter, collectively referred to as the "Apartments"). To wit:

   a. Beacon is the owner of Beacon Village, a residential apartment complex, located at 750 East Front Street in the City of Plainfield, New Jersey, which has 68 rental units (hereinafter referred to as the "Beacon Village Apartments").

2

   b.    Tudor is the owner of Tudor Arms, a residential apartment complex, located at 744 Watchung Avenue in the City of Plainfield, New Jersey, which has 27 rental units (hereinafter referred to as the "Tudor Arms Apartments").

   c.    Allentown is the owner of ten (10) residential apartment complexes located in the City of Allentown, Pennsylvania (hereinafter, collectively referred to as the "Allentown Apartments"). Those properties are:

      i.  Hamilton West I Apartments located at 1612 Hamilton Street, which has 25 rental units.
     ii.  Hamilton West II Apartments located at 10 South West Street, which has 20 rental units.
    iii.  Commodore Apartments located at 5-15 North 18th Street, which has 28 rental units.
    iv.  Reading Road Apartments located at 24 South Leh Street, which has 7 rental units.
     v.  Queen Elizabeth Apartments located at 856-867 North Ulster Street, which has 28 rental units.
    vi.  Carriage House Apartments located at 12-20 East Cumberland Street, which has 12 rental units.
   vii.  Park West Apartments located at 2245 Livingston Street, which has 8 rental units.
  viii.  Sutton Place Apartments located at 1015-1055 North St. Lucas Street, which has 19 rental units.
    ix.  Park Lane Apartments located at 901 North 14th Street, which has 8 rental units.
     x.  Sandy Hill Apartments located at 925-945 North 12th Street, which has 23 rental units.

7.    The Debtors are affiliates of Connolly Properties, Inc. ("Connolly Properties"), a property management company located in Plainfield, New Jersey. For years, Connolly Properties, through its principals David and Donna Connolly, has provided high quality, affordable rental housing to residents of East Orange, Plainfield, Trenton, and Camden, New Jersey, as well as Allentown.

8.    The Debtors do not have employees; rather, all of the Debtors' workers are employed by Connolly Properties, the management company for the Apartments, which charges the Debtor its direct costs and its proportionate share of overhead costs.

**Events Leading To Debtors' Bankruptcy Filing**

9. The Debtors, like so many owners of large rental properties, have been severely affected by the weak economy, and more specifically, the dire state of the multifamily housing market.

10. Unfortunately, the Apartments' vacancy rates have spiked in the past year, leaving the Debtors unable to cover the debt service on their respective mortgages.

11. After straining for months to make payments, the Debtors allegedly failed to make regular payments due on their promissory note obligations to Sovereign Bank ("Sovereign"). Sovereign is the successor-in-interest to Independence Community Bank.

**Ownership Structure of the Individual Debtors and Sovereign Loans and Mortgages**

A.  **Beacon Village Apartments**

12. Beacon Village, LLC is a limited liability company of the State of New Jersey. Beacon Village Trust is the sole member of Beacon Village, LLC which wholly owns Beacon Village, LLC. David Connolly is the Trustee of Beacon Village Trust.

13. Beacon purchased the Beacon Village Apartments on January 25, 2000, for $2,475,000.

14. On or about May 26, 2006, Beacon allegedly obtained a loan from Independence Bank in the amount of $3,800,000 (the "Beacon Loan"), which was memorialized by a promissory note issued by Beacon to Independence Bank of that same date (the "Beacon Note"). *See* **Exhibit A** annexed hereto.

15. As security for the Beacon Loan, Beacon granted Independence Bank a mortgage on the Beacon Village Apartments and fixtures therein; a security interest in the rents Beacon

receives from the tenants of the Beacon Village Apartments; and a security interest in virtually all of Beacon Village Apartment's personal property. *See* **Exhibit B** annexed hereto.

16. Additionally, Beacon granted Independence Bank an assignment of rents. *See* **Exhibit C** annexed hereto. (The mortgage, security agreement, and assignment of rents by and between Beacon and Independence Bank shall hereinafter collectively be referred to as the "Beacon Village Apartments Mortgage," and all of the collateral related thereto that takes the form of cash, cash equivalent, and rents shall hereinafter be referred to as the "Beacon Cash Collateral.")

**B.    Tudor Arms Apartments**

17. Tudor Arms, LLC is a limited liability company of the State of New Jersey. Tudor Arms Trust is the sole member of Tudor Arms, LLC which wholly owns Tudor Arms, LLC. David Connolly is the Trustee of Tudor Arms Trust.

18. Tudor purchased the Tudor Arms Apartments on August 6, 1999, for $1,006,000.

19. On or about March 26, 2006, Tudor allegedly obtained a loan from Independence Bank in the amount of $1,500,000 (the "Tudor Loan"), which was memorialized by a promissory note issued by Tudor to Independence Bank of that same date (the "Beacon Note"). *See* **Exhibit D** annexed hereto.

20. As security for the Tudor Loan, Tudor granted Independence Bank a mortgage on the Tudor Arms Apartments and fixtures therein; a security interest in the rents Tudor receives from the tenants of the Tudor Arms Apartments; and a security interest in virtually all of Tudor Arms Apartment's personal property. *See* **Exhibit E** annexed hereto.

21. Additionally, Tudor granted Independence Bank an assignment of rents. *See* **Exhibit F** annexed hereto. (The mortgage, security agreement, and assignment of rents by and

between Tudor and Independence Bank shall hereinafter collectively be referred to as the "Tudor Arms Apartments Mortgage," and all of the collateral related thereto that takes the form of cash, cash equivalent, and rents shall hereinafter be referred to as the "Tudor Cash Collateral.")

### C. Allentown Apartments

22. Allentown is a limited liability company of the Commonwealth of Pennsylvania. Pursuant to its Operating Agreement, David Connolly is the Manager of Allentown with full authority to operate its business and conduct its affairs.

23. Allentown purchased all the properties comprising the Allentown Apartments on April 12, 2002, for a total amount of $6,780,020.

24. On or about February 1, 2006, Allentown allegedly obtained a loan from Independence Bank in the amount of $8,400,000 (the "Allentown Loan"), which was memorialized by a promissory note issued by Allentown to Independence Bank of that same date (the "Allentown Note"). *See* **Exhibit G** annexed hereto.

25. As security for the Allentown Loan, Allentown granted Independence Bank a mortgage on the Allentown Apartments and fixtures therein; a security interest in the rents Allentown receives from the tenants of the Allentown Apartments; and a security interest in virtually all of Allentown Apartment's personal property. Additionally, Allentown granted Independence Bank an assignment of rents. *See* **Exhibit H** annexed hereto. (The mortgage, security agreement, and assignment of rents by and between Allentown and Independence Bank shall hereinafter collectively be referred to as the "Allentown Apartments Mortgage," and all of the collateral related thereto that takes the form of cash, cash equivalent, and rents shall hereinafter be referred to as the "Allentown Cash Collateral" and together with the Tudor Cash Collateral and the Beacon Cash Collateral, the "Cash Collateral").

## THE DEBTORS SHOULD BE
## AUTHORIZED TO USE CASH COLLATERAL

26. The Debtors should be authorized to use the Cash Collateral in the ordinary course of its business and in accordance with the budgets annexed hereto as **Exhibit I** (the "Budgets")[1], because Sovereign Bank is adequately protected by the substantial excess equity in the value of the Apartments and other collateral.

27. It is in the best interests of the Debtors and their estates that the Debtors' operations continue. For that to occur, the Debtors must be authorized to use the Cash Collateral. A hasty liquidation of the Debtors' assets is contrary to the best interests not only of the Debtors, but also to its creditors, both secured and unsecured.

## LEGAL AUTHORITY

28. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents ..." and the proceeds thereof. Pursuant to section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001(b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until this Court authorizes the use of cash collateral after notice and a hearing, upon a finding that the interest of the secured party is adequately protected.

29. Section 363(c)(2) of the Bankruptcy Code permits this Court to allow a debtor to use cash collateral so long as the debtor provides its secured creditors with adequate protection. "Adequate Protection" is not defined in the Bankruptcy Code, although section 361 of the

---

[1] As set forth in the accompanying Interim Order, the Debtors request that they be afforded use of cash collateral with a fifteen (15%) percent variance from the respective budgets, both cumulatively and with regard to each budget line item.

Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected.

30.  "Adequate Protection" is aptly described as "a balancing of the debtor's and a creditor's respective harm." *In re Carson*, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted). The legislative history to section 361 of the Bankruptcy Code reflects Congressional intent to give the Court flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. *In re 5-Leaf Cover Corp.*, 6 B.R. 463, 466 (Bankr. S.D.W.Va. 1980).

31.  The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. *In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); *In re South Village, Inc.*, 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. *In re Ramco Well Service, Inc.*, 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Thus, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. *Id.*; accord, *In re Price*, 40 B.R. 578, 580 (Bankr. N.C. Tex. 1984).

32.  In this case, the values of the Apartments are not declining, and therefore, Sovereign Bank is adequately protected. Additionally, the Debtors still have a steady amount of rents being paid by its tenants, which will be more than enough to satisfy all maintenance and upkeep fees.

33. The Debtors hereby seek the preliminary and final use of cash collateral to preserve their assets so as to maintain and maximize their value for the benefit of all parties-in-interest. As demonstrated below, under either or both theories of adequate protection, to wit, absence of diminution in value or equity cushion, Sovereign Bank remains adequately protected notwithstanding the Debtors' use of the Cash Collateral.

34. A denial of the use of Cash Collateral to fund the Debtors' day-to-day operations will severely harm the Debtors at a critical time. Not only will it hinder their ability to reorganize, but it will also prevent the Debtors from obtaining new tenants to fill the vacancies in the Apartments. Moreover, it will cause unnecessary difficulty to the existing tenants of the Apartments. Essentially, without the authority to use the Cash Collateral, the Debtors cannot continue to operate; that will cause a loss of going concern value, and preclude the ability to reorganize, thereby preventing creditors from realizing upon reorganization value.

35. The Debtors have a real ability to reorganize within a reasonable period of time and make significant distribution to all of creditors.

36. The Debtors are prepared to discuss with its secured and unsecured creditors the development of both a financial and operational restructuring plan. The authority to use Cash Collateral will enable the Debtors to engage in those discussions and accomplish its reorganization, while operating in the ordinary course.

**Secured Creditors Are Adequately Protected**

37. As set forth above, adequate protection is shown by an absence in diminution of the value of collateral. In this case, the Apartments are fully insured, and they are not going to decline in value. Accordingly, Sovereign Bank's interest is adequately protected.

## TIMING AND NOTICES

38. The Debtors respectfully seek a two-part hearing process. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtors seek a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fourteen (14) days' notice. Second, the Debtors seek a final hearing on at least fourteen (14) days' notice. At a minimum, the Debtors propose to give notice pursuant to Bankruptcy Rule 4001(b)(1) and (3) to the Office of the United States Trustee, all secured creditors, the twenty (20) largest unsecured creditors, any other parties claiming an interest in the cash collateral, and any party who has requested notice.

## NO PRIOR REQUEST

39. No prior application for the same or similar relief has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court preliminarily and finally approve the Debtors' use of Cash Collateral, pursuant to the Budgets, and in the ordinary course of business, and grant such other and further relief as this Court deems just and equitable.

**TRENK, DiPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
*Proposed Counsel to Debtors and
Debtors-in-Possession*

By:   /s/ Richard D. Trenk
      Richard D. Trenk

Dated: April 15, 2010

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, **DAVID CONNOLLY**, hereby verify that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: April 15, 2010                        /s/ David Connolly
                                                         DAVID CONNOLLY

*F:\WPDOCS\A-M\Connolly Properties\Beacon Village, LLC\CASH COLLATERAL - Application.doc*